| | | |
|---|---|---|
| THOMAS LEE BRENNAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ERIK A. HOOKS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court upon Respondent's Motion for Summary Judgment

(Doc. No. 4) seeking denial of Petitioner Thomas Lee Brennan's pro se Petition for Writ of

Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, (Doc. Nos. 1, 1-1).

## I.    BACKGROUND

Petitioner is a prisoner of the State of North Carolina who, after a jury trial in Haywood

County Superior Court, was found guilty of possession with intent to manufacture, sell or deliver

methamphetamine, possession of marijuana, and possession of drug paraphernalia.  The NCCOA

summarized the evidence at trial as follows:

> [O]n 2 April 2014, two detectives—Phillips and Beck—with the Haywood County
> Sheriff's Office were assigned to the Unified Narcotics Investigative Team, a multi-
> agency team focused on narcotics in Haywood County.  In response to complaints
> regarding heavy traffic and "high activity" at 116 Barefoot Ridge, the detectives set
> up surveillance near that address, sitting in an unmarked law enforcement vehicle
> and wearing plainclothes.  Detective Phillips was familiar with the address:  "[I]t
> was the residence of Robert Guinn, who we have had several ongoing cases with
> narcotics. . . ."  Detective Phillips testified that at 5:00 p.m. that day,[1] he observed
> a white Chevy Tahoe parked on the backside of the residence.  After about five
> minutes, the Tahoe left the residence and came to the intersection of Barefoot Ridge
> and Poison Cove Road.  The driver turned his head in the direction of the officers'
> vehicle and sat at the intersection for 20 to 30 seconds.  When the vehicle turned

---

[1] After refreshing his recollection, Detective Phillips corrected this testimony, and testified that his and Detective Beck's surveillance of the house began at 7:30 p.m., not 5:00 p.m.  (Trial Tr. 117, Resp't's Ex. 18 Vol. II, Doc. No. 5-19.)

onto Poison Cove Road, the detectives pulled away from their point of surveillance and followed the Tahoe. "[A]utomatically when he saw us coming behind the vehicle [the driver] began riding the brake." As the Tahoe approached New Clyde Highway, the Tahoe and the law enforcement vehicle were both traveling at 20 to 30 miles an hour when the Tahoe "just abruptly turned left," causing Detective Beck to slam on his brakes to keep from rear-ending the Tahoe. The detectives conducted a traffic stop of the Tahoe for making an unsafe turn without signaling. The Tahoe pulled over near a tobacco barn. Detective Phillips's testimony about defendant's behavior during the stop included the following:

> [Defendant] was acting very erratic. His hands were shaking. He was very nervous. He would speak really loud and speak real soft and, I mean, just shaking nervous. . . . I could see his eyes. His eyes looked like his pupils were very constricted about the size of a pinhead. Just with my training and experience, that's somebody who appears to be under the influence of a substance. Since I didn't smell alcohol, me being a narcotics detective, I thought it was going to be—or he was going to be impaired of some kind of narcotic.

Detective Phillips requested defendant's consent to search the vehicle, but defendant refused. Defendant was ordered to exit the vehicle and was informed that a K–9 unit was en route. Upon arrival, the K–9 officer "hit on the rear of the vehicle." Inside the vehicle in the center console between the front seats, officers discovered a bag of marijuana and in the cargo area of the rear, two digital scales, along with a golf-ball sized ball of crystallized methamphetamine weighing 8.75 grams.

State v. Brennan, 786 S.E.2d 433, 2016 WL 1745101, at *2 (N.C. Ct. App. 2016) (unpublished table decision) (footnote added). The evidence at trial showed that Phillips and Beck initiated the traffic stop at 7:34 p.m. on April 2, 2014, and called for the canine unit at 7:52 p.m., which arrived on the scene at 8:00 p.m. (Trial Tr. 105, Resp't's Ex. 18 Vol. II, Doc. No. 5-19.) Petitioner was arrested at 8:23 p.m. (Trial Tr. 106, id.)

Prior to trial, counsel filed a motion to suppress the evidence seized during the search of the vehicle. (Pre-trial Mots. Tr. 3, Resp't's Ex. 18 Vol. I, Doc. No. 5-19.) The court denied the motion as untimely filed pursuant to N.C. Gen. Stat. §§ 975(b), 976. (Id. at 14.)

After the jury returned its verdicts, Petitioner pled guilty to attaining the status of habitual felon. The trial court sentenced Petitioner to an active term of 84 to 113 months. Judgment was

entered on February 12, 2015.

Petitioner filed a pro se notice of appeal, which was not accepted due to defects in the notice. See Brennan, 786 S.E.2d 433, 2016 WL 1745101, at *2. Thereafter, however, appellate counsel filed a petition for writ of certiorari on Petitioner's behalf, which the North Carolina Court of Appeals ("NCCA") granted. The NCCA affirmed Petitioner's judgment on May 3, 2016. See id. at *4. Petitioner did not seek discretionary review in the North Carolina Supreme Court.

After filing multiple pro se and counseled post-conviction motions pursing collateral relief from judgment in the state courts, Petitioner filed the instant pro se federal habeas Petition in this Court on June 2, 2018. He raises the following grounds for relief: 1) trial counsel was ineffective for filing an untimely motion to suppress; 2) appellate counsel was ineffective for failing to argue trial counsel's ineffective performance related to the motion to suppress; and 3) appellate counsel was ineffective for failing to perfect a timely appeal. Respondent has filed a Motion for Summary Judgment (Doc. No. 4) and Petitioner has responded (Doc. No. 7).

## II.    LEGAL STANDARD

The habeas statute at 28 U.S.C. § 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal court's power to grant habeas relief is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses contained in § 2254(d)(1) are to be given independent meaning—in other words, a petitioner may be entitled to habeas corpus relief if the state court adjudication was either contrary to or an unreasonable application of clearly established federal law.

AEDPA's standard is intentionally "difficult to meet." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quote and citation omitted). " '[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.' " Id. (quoting Howes v. Fields, 565 U.S. 499, 505 (2012)) (internal quote and citation omitted) (first alteration in the original).

A state court decision can be "contrary to" clearly established federal law in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (plurality opinion). "And an 'unreasonable application of' [clearly established Federal law] must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 572 U.S. at 419 (quoting Lockyer v. Andrade, 538 U.S. 63, 75–764 (2003)) (alteration added). "Rather, '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Woodall, 572 U.S. at 419-420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

4

### III.    DISCUSSION

A defendant seeking relief based on ineffective assistance of counsel must meet two

components: "[a] petitioner must show that counsel's performance was deficient, and that the

deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing

Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> The court must evaluate the conduct from counsel's perspective at the time, and
> apply a strong presumption that counsel's representation was within the wide range
> of reasonable professional assistance, in order to eliminate the distorting effects of
> hindsight.  In all cases, the petitioner's burden is to show that counsel made errors
> so serious that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.

Porter v. Zook, 898 F.3d 408, 434 (4th Cir. 2018), cert. denied, 139 S. Ct. 2012 (2019) (quoting

Christian v. Ballard, 792 F.3d 427, 443 (4th Cir. 2015) (citations and internal quotation marks

omitted)).

In order to show prejudice, "the petitioner must . . . show that 'there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.'" Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012) (quoting Strickland,

466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence

in the outcome, and the likelihood of a different result must be substantial, not just

conceivable[.]" Id. at 139–40 (citations, alteration, and internal quotation marks omitted)

(emphasis in original).  On habeas review, this Court's inquiry "is limited to whether the [state]

court's ineffective assistance determination was contrary to or an unreasonable application of

Supreme Court precedent or an objectively unreasonable factual determination." Williams v.

Stirling, 914 F.3d 302, 312 (4th Cir. 2019), as amended (Feb. 5, 2019).

#### A.  Traffic Stop and Search of Vehicle

Petitioner claims trial counsel was ineffective for filing an untimely motion to suppress

evidence seized during what he contends was "an illegal [traffic] stop and prolonged search and seizure of" his vehicle. (§ 2254 Pet. 6, Doc. No. 1-1). He also claims appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on direct appeal. Petitioner raised these claims in his December 13, 2017 MAR. (Dec. 13, 2017 MAR, Resp't's Ex. 13, Doc. No. 5-14.) The MAR court summarily denied the claims on the merits. (Jan. 11, 2018 MAR Order, Resp't's Ex. 14, Doc. No. 5-15.)

"Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. "This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Id. In such a situation, the habeas court "must determine what arguments or theories . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

The pivotal question in Petitioner's case "is whether the state court's application of the Strickland standard was unreasonable." Richter, 562 U.S. at 101. Here, the MAR court could have decided that Petitioner had failed to show there was a reasonable probability that the trial court would have suppressed evidence seized from the search of his car, had trial counsel filed a timely motion to suppress. See Strickland, 466 U.S. at 694.

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' under the Fourth Amendment." United States v. Bowman, 884 F.3d 200, 209 (4th Cir. 2018) (quoting Whren v. United States, 517 U.S. 806, 809 (1996)) (internal quotation marks omitted). "An automobile stop, therefore, is subject to the reasonableness requirement of the Fourth Amendment."

Bowman, 884 F.3d at 209 (citing Whren, 517 U.S. at 810 ("An automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances.").  A traffic stop is reasonable if:  "(1) the stop was 'legitimate at its inception,' United States v. Hill, 852 F.3d 377, 381 (4th Cir. 2017), and (2) 'the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop,' United States v. Williams, 808 F.3d 238, 245 (4th Cir. 2015) (internal quotation marks omitted)."  Bowman, 884 F.3d at 209.

"An officer's initial 'decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'"  Id. (quoting Whren, 517 U.S. at 810).  Here, the MAR court reasonably could have concluded Detectives Phillips and Beck had probable cause to stop Petitioner for a traffic violation based upon their uncontradicted trial testimony that after driving erratically for several minutes, including repeatedly pumping his brakes, hanging his head out of the window to look in the side view mirror, neglecting to watch the road in front of him, slowing down twice as if preparing to turn, then speeding back up and proceeding straight, Petitioner made an abrupt turn without activating his turn signal, causing Beck to slam on his brakes to avoid rear-ending Petitioner's vehicle.

"[A] seizure that is 'lawful at its inception can nevertheless violate the Fourth Amendment because its *manner* of execution unreasonably infringes' on rights protected by the Fourth Amendment."  Bowman, 884 F.3d at 209 (quoting United States v. Jacobsen, 466 U.S. 109, 124 (1984) (emphasis added)).  "A lawful traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete [the] mission' of issuing a warning ticket."  Bowman, 884 F.3d at 209-210 (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)).  "The permissible duration of a traffic stop 'is determined by the seizure's mission—to address the traffic violation that warranted the stop,' meaning that it may 'last no longer than is necessary to effectuate that purpose.'"  Bowman, 884 F.3d at 210 (quoting Rodriguez v. United States, 135

S.Ct. 1609, 1614 (2015) (alteration and internal quotation marks omitted)). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Bowman, 884 F.3d at 210 (quoting Rodriguez, 135 S.Ct. at 1614) (internal quotation marks omitted). "Ordinary tasks incident to a traffic stop include 'inspecting a driver's identification and license to operate a vehicle, verifying the registration of a vehicle and existing insurance coverage, and determining whether the driver is subject to outstanding warrants.'" Bowman, 884 F.3d at 210 (quoting Hill, 852 F.3d at 382). "A dog sniff around the vehicle's perimeter . . . [to] detect[ ] narcotics 'is not an ordinary incident of a traffic stop.'" Bowman, 884 F.3d at 210 (quoting Rodriguez, 135 S.Ct. at 1615) (alterations added).

"The Fourth Amendment permits an officer to conduct an investigation unrelated to the reasons for the traffic stop as long as it '[does] not lengthen the roadside detention.'" Bowman, 884 F.3d at 210 (quoting Rodriguez, 135 S.Ct. at 1614 (alteration added); citing Hill, 852 F.3d at 382 ("While diligently pursuing the purpose of a traffic stop, officers also may engage in other investigative techniques unrelated to the underlying traffic infraction . . . only as long as that activity does not prolong the roadside detention for the traffic infraction.")). "For instance, police during the course of a traffic stop may question a vehicle's occupants on topics unrelated to the traffic infraction, see Arizona v. Johnson, 555 U.S. 323, 333 . . . (2009), or perform a dog sniff around the outside of a vehicle, see Caballes, 543 U.S. at 409, . . . as long as the police do not 'extend an otherwise-completed traffic stop in order to conduct' these unrelated investigations, Williams, 808 F.3d at 245. " Bowman, 884 F.3d at 210. "[I]in order 'to extend the detention of a motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must either possess reasonable suspicion [of ongoing criminal activity] or receive the driver's consent.'" Id. (quoting Williams, 808 F.3d at 245–46 (internal quotation marks omitted)) (alterations added).

"To show the existence of reasonable suspicion, 'a police officer must offer specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief that criminal activity is afoot.'" Bowman, 884 F.3d at 213 (quoting United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008)) (additional citation and internal quotation marks omitted). " 'Reasonable suspicion is a commonsense, nontechnical standard,' [United States v. Palmer, 820 F.3d 640, 650 (4th Cir. 2016)] (internal quotation marks omitted), 'that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,' [Ornelas v. United States, 517 U.S. 690, 695 (1996)] (internal quotation marks omitted)." Bowman, 884 F.3d at 213. "In reviewing police action, courts must look at whether the evidence as a whole establishes reasonable suspicion rather than whether each fact has been individually refuted, remaining mindful of 'the practical experience of officers who observe on a daily basis what transpires on the street.'" Id. (quoting Branch, 537 F.3d at 336–37 (internal quotation marks omitted)). "The reasonable suspicion standard is less demanding than the probable cause standard or even the preponderance of evidence standard." Bowman, 884 F.3d at 213 (citing Illinois v. Wardlow, 528 U.S. 119 (2000)).

The MAR court reasonably could have concluded that Phillips's and Beck's uncontradicted testimony offered "specific and articulable facts that demonstrate[d] at least a minimal level of objective justification for the belief that" Petitioner had drugs in the car. Bowman, 884 F.3d at 213. Those facts could have included the following: Phillips was an experienced investigative and undercover narcotics officer; while Phillips was obtaining Petitioner's driver's license and other information incident to the traffic stop, Petitioner exhibited behaviors and characteristics that Phillips recognized from his training and experience as signs of drug impairment, including nervousness, fidgetiness, shaking hands, constricted pupils, argumentativeness, and alternately speaking loudly and very softly; Phillips did not smell alcohol

when speaking to Petitioner; Petitioner told Phillips that his shaky hands and fidgetiness were side effects of a history of heavy crack cocaine use; prior to the traffic stop, Phillips and Beck had been surveilling the residence of an individual Phillips knew to be involved in the drug trade; Phillips and Beck observed Petitioner leave that residence; Petitioner saw Phillips's and Beck's surveillance car when it was parked near the residence; after Beck pulled onto the road and began following him, Petitioner drove erratically; and after Beck initiated the traffic stop, Petitioner rolled up his windows, got out of his car and approached the detectives' car before either had gotten out of their vehicle, which the detectives characterized as uncommon or abnormal behavior during a traffic stop.

In sum, it would not have been unreasonable for the MAR court to conclude that based upon the totality of the circumstances, Phillips and Beck had reasonable suspicion to believe Petitioner had drugs in his car and that such reasonable suspicion justified extending their seizure of Petitioner and his vehicle and calling a K-9 unit to sniff around the vehicle's perimeter. See Bowman, 884 F.3d at 213. It would not have been unreasonable, then, for the MAR court also to conclude that the dog's positive alert gave Phillips and Beck probable cause to search the car. See, e.g., United States v. Jeffus, 22 F.3d 554, 557 (4th Cir. 1994) ("When the dog 'alerted positive' for the presence of drugs, the officer was given probable cause for the search that followed.").

Accordingly, "there is at least one theory that could have led a fairminded jurist to conclude that [a timely-filed] suppression motion would have failed." Richter, 562 U.S. at 102. Consequently, Petitioner has not demonstrated that the MAR court's application of the Strickland standard was unreasonable when it denied his claim that trial counsel was ineffective for filing an untimely motion to suppress. See id. at 101; Strickland, 466 U.S. at 694. Respondent is entitled to summary judgment on Petitioner's ineffective assistance of trial

counsel claim.

It should go without saying that Petitioner likewise has failed to demonstrate that the MAR court's application of the <u>Strickland</u> standard was unreasonable when it denied his claim that appellate counsel was ineffective for refusing to challenge trial counsel's effectiveness on direct appeal. <u>See</u> <u>id.</u> As appellate counsel explained in a letter to Petitioner, he did not argue that trial counsel was ineffective for filing an untimely motion to suppress, because:

> Under Fourth Amendment law, the officers were justified in pulling you over based on your erratic driving, especially the fact that you made a sudden turn without signaling, which caused them to slam on their brakes. The officers could pull you over because they had reasonable suspicion that a traffic violation had occurred.
>
> Once you were pulled over, the officers observed your behavior. They testified that you appeared intoxicated by drugs. They noticed what they claimed was your nervous manner, your shaking hands, and you constricted pupils. They also knew you had just come from Robert Guinn's house, which they said was known for drugs. In addition, the officers said you told them you were a drug user. All of this information gave the officers reasonable suspicion of a drug offense. Thus, they could hold you until a drug dog could arrive and sniff your car. That is exactly what <u>Rodriguez</u> requires. Under that case, officers cannot hold a motorist at a traffic stop in order to conduct a dog sniff, unless there is reasonable suspicion of a drug crime.

(Sept. 3, 2015 David Weiss Let., Resp't's Ex. 11 at 12, Doc. No. 5-12.)

Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983); <u>see</u> <u>also</u> <u>Smith v. Murray</u>, 477 U.S. 527, 535 (1986); <u>Evans v. Thompson</u>, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal.") Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. <u>See</u> <u>Jones</u>, 463 U.S. at 751–52. Prejudice can be shown by demonstrating that " 'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.' " <u>Bell v. Jarvis</u>, 236 F.3d 149, 180 (4th Cir. 2000) (quoting <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994)).

Appellate counsel's letter demonstrates he understood Fourth Amendment law related to search and seizures, was familiar with the Supreme Court's Rodriguez decision, was familiar with the details of Phillips's and Beck's uncontradicted testimony about Petitioner's behavior prior to and after the stop, and made a reasoned decision not to pursue an ineffective assistance of trial counsel claim on direct appeal because he believed it would be unsuccessful. For the reasons previously discussed, the MAR court could have agreed with appellate counsel's assessment. There is, then, at least one theory that could have led a fairminded jurist to conclude that there was no reasonable probability of success on appeal based upon a claim that trial counsel was ineffective for failing to file a timely motion to suppress. See Richter, 562 U.S. at 102; Strickland, 466 U.S. at 694. Consequently, Respondent is entitled to summary judgment on this claim.

### B. Failure to Perfect a Timely Appeal

Petitioner claims in cursory fashion that appellate counsel was ineffective for failing to perfect a timely direct appeal. (§ 2254 Pet. 5.) This claim is unexhausted, as Petitioner failed to raise it in the state courts. Respondent has not raised the exhaustion defense, so the Court addresses the claim de novo.

The record shows that Petitioner filed a pro se notice of appeal, and due to defects in the notice, appellate counsel filed a certiorari petition to ensure that Petitioner received his appeal. See Brennan, 786 S.E.2d 433, 2016 WL 1745101, at *2. Because the NCCOA granted certiorari and gave Petitioner appellate review, this issue is moot. There could be no professional dereliction creating a reasonable probability of a different result under Strickland, because the NCCOA in fact granted Petitioner appellate review. Id. Accordingly, Respondent is entitled to summary judgment on this claim.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**;

2. The Petition for Writ of Habeas Corpus (Doc. Nos. 1, 1-1) is **DENIED**; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: September 23,

Frank D. Whitney
Chief United States District Judge